

ENTERED
11/22/2013

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

IN RE: §
JOSE HECTOR RESENDIZ; dba DEVINE § CASE NO: 12-10603
BUILDERS §
    Debtor(s) §
     § CHAPTER 13

## MEMORANDUM OPINION AND ORDER ON PLAN CONFIRMATION

Before the Court is the proposed Chapter 13 plan (the "Plan") filed by Jose Hector Resendiz (the "Debtor"). The Plan provides for a 5% dividend to the general unsecured class and also includes a child support arrearage claim or Domestic Support Obligation, (the "DSO") in the amount of $10,973.13, to be paid at 6% interest. The Chapter 13 Trustee (the "Trustee") did not object to Debtor's plan. However, the Trustee does not recommend that the plan be confirmed because, pursuant to 11 U.S.C. §1322(b)(10), in order to pay interest on a non-dischargeable unsecured claim the Debtor must propose a 100% repayment plan. The general unsecured class in Debtor's Plan totals $195,210.33. A 100% repayment plan is not feasible. The Court, having heard the evidence and arguments of counsel, finds as follows.

### BACKGROUND

On November 27, 2012, Debtor filed his chapter 13 bankruptcy petition and his Chapter 13 Plan (the "Plan"). On February 25, 2013, the First Meeting of Creditors was held, Debtor appeared and the meeting was concluded. On May 10, 2013, the Trustee filed her Motion to Dismiss based on the Debtor's failure to amend his Plan to remove the 6% interest on the DSO and reclassify the claim as a general unsecured claim. On May 24, 2013, the Motion to Dismiss was continued.

Debtor's Plan classified the pre-petition DSO in the amount of $10,973.13 as a priority claim to be paid 6% interest under the Plan. The Trustee, in order to recommend plan confirmation, require that the Debtor amend the Plan to reclassify the DSO claim as a general unsecured claim to be paid 0% interest or propose a 100% dividend to the unsecured class of creditors.  The Trustee does not dispute that the claim is a DSO as that term is defined in the U.S. Bankruptcy Code pursuant to 11 U.S.C. 101(14A).

## DISCUSSION

Venue of this proceeding lies in the Bankruptcy Court for the Southern District of Texas, Brownsville Division, pursuant to 28 U.S.C. §1409(a) in that Debtor initiated a voluntary petition under Chapter 13 of the Bankruptcy Code in this District.

The District Court has jurisdiction pursuant to 28 U.S.C. § 1334(b).  This matter has been referred to the Bankruptcy Court by General Order 2005-12.  This is a core proceeding under 28 U.S.C. § 157.

The issue before the Court is whether the Court can confirm a Chapter 13 Plan which proposes to pay 6% interest on a DSO claim without proposing a 100% dividend to the general unsecured class. Title 11 was designed by Congress in 1978 to provide debtors with a "fresh start" by granting them a discharge from certain obligations, to distribute assets and pay claims in a predetermined scheme with a statutory system of priorities, and to provide debtors with an opportunity to reorganize, rehabilitate, or liquidate.

A fresh start is the ultimate goal for any debtor in bankruptcy. If a debtor completes a chapter 13 plan but still owes interest on child support arrearage (a claim that could result in jail time by the Family Law Court) he does not receive his long awaited fresh start.  As illustrated in Debtor's admitted Exhibit #15, the Debtor is under a pre-petition  Enforcement Order for

nonpayment of child support which, if taken back to the Family Law Court post-discharge, is punishable by confinement in jail for up to six months and a fine of up to $500 for each violation. 11 U.S.C. §1322(b)(10) provides as follows:

> Subject to subsections (a) and (c) of this section, the plan may--
>
> (10) provide for the payment of interest accruing after the date of the filing of the petition on unsecured claims that are nondischargeable under section 1328(a), except that such interest may be paid only to the extent that the debtor has disposable income available to pay such interest after making provision for full payment of all allowed claims.
>
> - - 11 U.S.C. §1322(b)(10).

The term "domestic support obligation" was added to Section 101 of the Bankruptcy Code by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). The term is defined in 11 U.S.C. §101(14A) as:

> … a debt that accrues before, on or after the date of the order for relief in a case under this title, **including interest** (emphasis added) that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is—
>
> (A) Owed to or recoverable by--
>
> (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative;
>
> …
>
> (B) in the nature of alimony, maintenance, or support .. of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
>
> (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of—
>
> (i) a separation agreement, divorce decree, or property settlement agreement;
>
> (ii) an order of a court of record …

- - 11 U.S.C. §101(14A)

BAPCPA amended the priority scheme under § 507(a) and moved unsecured claims for pre-petition domestic support obligations owed to a spouse, a former spouse, or child of the debtor, or such child's parent, legal guardian, or responsible relative, to a first priority position under newly added § 507(a)(1)(A).  In addition, newly added § 507(a)(1)(B) gives first priority to pre-petition support obligations owed to a government unit, subject to claims under § 507(a)(1)(A).  Prior to the BAPCPA amendments, claims for alimony, maintenance or support were entitled to seventh priority under § 507(a)(7).  Now, domestic support obligations of the debtor are entitled to first priority, subject to carve out for the expenses of a trustee in administering assets that might otherwise be used to pay the support obligations.

If at the time of the bankruptcy filing a debtor owes a matured DSO, the DSO recipient may assert a claim for the DSO amount which was due prepetition.  That is, "[t]o the extent … that a claim is for matured [DSO] payments unpaid at the time of the filing of the petition, the claim would be proper and would, therefore, be allowed to share in a distribution of the debtor's assets.  Indeed, such a claim would be entitled to priority…" 4 COLLIER ON BANKRUPTCY, ¶ 502.03[6][a] (15th ed. rev.).  Such matured DSO claims are elevated to first priority payment in accordance with 11 U.S.C. §507(a)(1)(A), which provides in relevant part:

(a)  The following expenses and claims have priority in the following order:

    (1) First:

    (A) Allowed unsecured claims for domestic support obligations that, as of the date of the filing of the petition in a case under this title, are owed to or recoverable by a spouse, former spouse, or child of the debtor, or such child's parent, legal guardian, or responsible relative, …

- - 11 U.S.C. § 507(a)(1)(A).

Thus, an allowed unsecured DSO claim is entitled to first priority payment through the chapter 13 plan and should be paid with interest. Should the interest portion of the claim not be paid in the plan or directly by the debtor, the debtor could be subject to post-discharge enforcement actions by the custodial parent. For example, "[t]o the extent that the amounts unpaid at the time of the filing of the petition are not satisfied in full from the debtor's assets, the nondischargeability feature of such debt presupposes that after the debtor's discharge the spouse may proceed against after-acquired assets and exempt assets." 4 COLLIER ON BANKRUPTCY, ¶ 502.03[6][a] (Matthew Bender 2005); *see also* 11 U.S.C §362(b)(2)(B*)* (which permits the collection of a domestic support obligation from property that is not property of the estate, permitting the non-debtor spouse who holds a nondischargeable claim, to collect the claim from property of the debtor without obtaining stay relief and without waiting for the granting of a discharge or the closing of the case).

A "domestic support obligation," as the Bankruptcy Code now defines the term, includes not only a child support arrearage, but also interest accruing on the arrearage under applicable nonbankruptcy law. *See,* 11 U.S.C. §101 (14A). The applicable nonbankruptcy law in this case is section 157.265 of the Texas Family Code*,* which provides (in pertinent part) that interest accrues on delinquent child support at the rate of six percent per year from the date the support is delinquent until the support is paid. The Texas Family Code, made applicable to Debtor's bankruptcy case by Section 101(14A), clearly entitles the DSO claimant to post-petition interest on pre-petition child support arrears. *See e.g., In re Anthony,* 453 B.R. 782 (Bankr. D.N.J. 2011); *See also, Leeper v. Pennsylvania Higher Educ. Assistance Agency,* 49 F.3d 98, 103 (3d Cir. 1995) *(citing In re Crable, 174 B.R. 62, 63* (Bankr. W.D. Ky. 1994) (permitting accrual of post-petition interest on nondischargeable debt for child support during pendency of Chapter 13

proceeding); *In re Wright,* 438 B.R. 550, 552-53 (Bankr. M.D.N.C. 2010*)* (holding that interest on past-due child support is a domestic support obligation).

Additionally, 11 U.S.C. § 1322(a)(2) requires that the Debtor's plan provide for the full payment of all claims entitled to priority under Section 507, unless the holder of the claim agrees to a different treatment. Here the Attorney General filed a proof of claim that requires the payment of 6% interest on the DSO and does not agree to a different treatment.

Further, because all claims entitled to priority under 11 U.S.C. §507 must be paid in full pursuant to 11 U.S.C. §1322(a)(2), the Court must deny confirmation of a plan that does not propose to pay post-petition interest accruing on a claim for a domestic support obligation. *In re Reid, 2006 WL 2077572 (Bankr.M.D.N.C. 2006).* Thus, the Debtor's Plan must provide for the payment of any interest accruing pursuant to nonbankruptcy law on any claims for domestic support obligations.

The Debtor acted in good faith and proposed a Plan that is confirmable. With respect to good faith, a totality of the circumstances test is used to determine whether a chapter 13 plan has been proposed in good faith, as required by 11 U.S.C. §1325(a)(3). *In re Stanley,* 224 Fed.Appx. 343, 346 (5th Cir. 2007). Good faith factors include: "(1) the reasonableness of the proposed repayment plan; (2) whether the plan shows an attempt to abuse the spirit of the Bankruptcy Code; (3) whether the debtor genuinely intends to effectuate the plan; (4) whether there is any evidence of misrepresentation, unfair manipulation, or other inequities; (5) whether the filing of the case was part of an underlying scheme of fraud with an intent not to pay; (6) whether the plan reflects the debtor's ability to pay; and (7) whether a creditor has objected to the plan. *Id.* "In applying this test, the bankruptcy court 'exacts an examination of all of the facts in order to determine the bona fides of the debtor.'" *Id. (citing, In re Chaffin,* 816 F.2d 1070, 1073 (5th Cir.

1987)).  Here the Court finds that here is no evidence of bad faith by the Debtor in proposing the Plan.

## CONCLUSION

For the reasons stated above, the Court finds that the Debtor's Plan should be confirmed.

It is so **ORDERED**.

SIGNED 11/20/2013.

_____
Richard S. Schmidt
United States Bankruptcy Judge